UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GARRETT M. COOK,

     Plaintiff,

v.                                 Case No. 8:23-cv-2735-KKM-LSG

MICHAEL BROOKS, et al.,

     Defendants.

_____

## ORDER

Garrett Cook sues a group of law enforcement officers, including the Polk County Sheriff, and alleges violations of the Fourth Amendment and Florida tort law. Am. Compl. (Doc. 30). The defendants move to dismiss based on qualified immunity and the failure to plausibly allege certain claims. Mot. to Dismiss (MTD) (Doc. 38). For the below reasons, I grant the defendants' motion as to Cook's federal claims and decline to exercise supplemental jurisdiction over Cook's state law claims.

## I.   BACKGROUND

In December 2020, Deputy Raczynski with the Polk County Sheriff's Office (PCSO) assisted with a criminal investigation following a traffic stop conducted on

Shanille Sanders. Am. Compl. ¶ 15.[1] Cook, at that time a deputy with the PCSO, and Deputy Lawson participated in the investigation with Raczynski. *Id.* ¶ 16. After a canine alerted the officers to narcotics in the vehicle, the three officers conducted a search, which resulted in the seizure of a small bag of cannabis, a cell phone, and $723 in cash. *Id.* ¶ 17. Cook counted the money at the scene and then handed it to Lawson. *Id.* ¶ 18. Cook had no further contact with the money. *Id.*

Two days after the seizure, Raczynski dropped thirteen items of evidence into the "Property and Evidence" storage locker at the Central District Substation. *Id.* ¶ 19. Raczynski did not log the cash, nor did he list it as an item of evidence. *Id.* Between December 21, 2020, and March 16, 2021, both Raczynski and Lawson discussed the missing money. *Id.* ¶ 35. Cook did not agree to assist in replacing the money and he did not plan or conspire to replace the missing money. *Id.*

On March 15, 2021, Raczynski called Officer Gabriella Propst, a property clerk for the Property and Evidence section, and informed her that, after he moved the evidence bag from Lawson's trunk, he could not find the $723. *Id.* ¶¶ 20–21. He told her "that the missing money was being handled by 'floater money.'" *Id.* ¶ 21. Propst grew suspicious after she was unable to find any record of Raczynski submitting cash into evidence, so she reported her conversation to her supervisor. *Id.* ¶ 22.

---

[1] At this stage, I accept the complaint's factual allegations as true and construe them in the light most favorable to the plaintiff. *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

After speaking to Propst, Raczynski created a "Supplement" report that listed the $723. *Id.* ¶ 23. Without Cook's consent or permission, Raczynski used Cook's password to electronically notarize the supplement report. *Id.* ¶¶ 24, 27. "The action of notarizing a police report is attesting that the report was written by the Deputy who signed the report, not attesting to the contents of the report or the accuracy of the information contained in the report." *Id.* ¶ 25. Defendant Sergeant Taylor Plowden approved the report without review, even though a review of the report, "which is required, would have revealed that no currency was entered in the property tab." *Id.* ¶ 28.

On March 18, 2021, Defendant Detective Michael Brooks "interviewed Sergeant Anderson, who took over for [Sergeant Plowden], about the missing cash and the phone call" between Propst and Raczynski. *Id.* ¶ 31. Anderson had spoken with Raczynski about the missing money. *Id.* Brooks learned from Anderson that Raczynski had said that "he left all the evidence and the money at the scene with Deputy Lawson," but that when he returned to retrieve the money, it was not there. *Id.* Raczynski told Anderson that he planned to submit money into evidence to replace the missing cash. *Id.* Also, in a separate conversation, Raczynski told another detective that "he placed the money in a safe at the Property and Evidence section because he had dropped it into evidence without a label." *Id.* ¶ 32. Neither of these events, though, ever happened. *Id.* ¶ 33.

On March 19, 2021, Brooks interviewed both Lawson and Raczynski. Lawson said that he put the cash into an evidence bag, which Raczynski placed in his car. *Id.* ¶ 34. Lawson then got into a fight with Raczynski about who was going to take custody of the bag. *Id.* Raczynski told Brooks that he knew Cook's notary password and that he did not contact Cook before electronically notarizing the supplement report. *Id.* ¶ 37; *see id.* ¶ 26 ("Defendant, Detective Brooks, knew that this electronic notary was 'fraudulent' based on the statement of Deputy Raczynski that he knew Mr. Cook's password and used it to electronically notarize his Supplement report."). Raczynski also told Brooks that Lawson sent him $500 to replace the missing money and that Raczynski agreed to contribute the remaining $223. *Id.* ¶ 37. Neither Raczynski nor Lawson "made any allegation that Mr. Cook ever had possession of the money after it was counted." *Id.* ¶ 36.

After completing his investigation, Brooks, by the direction of Defendant Sergeant Mark Dainty, arrested Lawson and charged him with Conspiracy to Commit Tampering or Fabricating Evidence. *Id.* ¶ 38. Brooks also arrested and charged Raczynski with Conspiracy to Commit Tampering or Fabricating Evidence, Forgery, and Uttering a Forged Instrument. *Id.* ¶ 39.

Brooks and Dainty then interviewed Cook. *Id.* ¶ 40. Cook informed them that his sole involvement with the money was counting it at the scene and that he did not notarize the supplement report or authorize Raczynski to use Cook's credentials. *Id.* Cook told

Brooks and Dainty that a review of his agency computer would confirm that he did not notarize the report. *Id.* ¶ 41. Cook also said that his supervisor would confirm that he was out of the county at SWAT training on the day of the notarization and therefore could not have notarized the report. *Id.* Defendants Lieutenant Dina Russell, Major Britt Williams, and Chief Larry Williams were in the observation room listening to this interview. *Id.* ¶ 42. Brooks was supervised by Dainty, Dainty by Russell, Russell by Bart Davis,[2] Davis by Britt Williams, Britt Williams by Larry Williams, and Larry Williams by Sheriff Judd. *Id.* ¶ 43. Brooks, Dainty, Russell, Britt Williams, and Larry Williams discussed the matter and collectively decided to arrest Cook. *Id.* All five defendants also made the collective decision not to investigate Cook's alibi and computer records. *Id.*

Brooks arrested Cook and charged him with one count of Conspiracy to Commit Tampering or Fabricating Evidence. *Id.* ¶ 44. Brooks testified under oath that Dainty conveyed the decision to arrest Brooks, but according to Brooks the "decision came from 'much higher than' " Dainty. *Id.* ¶ 45. Russell testified that she knew Britt Williams made calls to his chain of command regarding the investigation of Cook, and there are only two officers above Major Williams: Larry Williams and Judd. *Id.* ¶ 46. Given Sheriff Judd's longstanding presence as an authority figure, Cook alleges that it is "reasonable to believe" that Judd "was a part of the arrest decision making process and gave ultimate approval of

---

[2] Davis is not a defendant in this case.

5

[Cook's] arrest based upon the input and approval of the other law enforcement actors listed in the complaint." *Id.*

As a result of his arrest, Cook spent one day in jail and resigned his law enforcement position. *Id.* ¶ 47. Although Brooks obtained Cook's cell phone and later applied for a search warrant, no evidence of a conspiracy or a transfer of money from Cook has been provided to Cook or his counsel. *Id.* ¶¶ 48–49. Sheriff Judd announced Cook's arrest at a press conference on March 22, 2021. *Id.* ¶ 50. He held up Cook's picture and said, "They put several pieces of evidence into property and evidence. But they don't put any cash." *Id.* Even after the Sheriff knew the accusations against Cook to be false and even after Cook had the records expunged, the Sheriff kept the accusations on the Sheriff's Department website. *Id.*

On May 14, 2021, the State Attorney's Office filed a "no bill" as to Cook's charge and dropped the case. *Id.* ¶ 51. Nevertheless, Cook has been unable to obtain employment as a law enforcement officer in any capacity. *Id.* ¶ 52. When Cook was arrested, he possessed a conditional offer from the FBI, but once Cook notified his applicant correspondent of his arrest and charge, the FBI notified Cook that he was no longer eligible for hire. *Id.* ¶ 53.

Cook initiated this action. In his amended complaint, Cook brings false arrest and malicious prosecution claims under § 1983 against Brooks, Dainty, Russell, Britt Williams,

Larry Williams, Plowden, and Judd, all in their individual capacities. *Id.* ¶¶ 54–158 (Count I through Count XIV). Cook pleads six state-law false arrest claims against Sheriff Judd in his official capacity for the actions of Brooks, Dainty, Russell, Britt Williams, Larry Williams, and Plowden (Count XV through Count XX), and one each against Brooks, Dainty, Russell, Britt Williams, Larry Williams, and Plowden in their individual capacities (Count XXI through Count XXVI). *Id.* ¶¶ 159–224. Cook seeks damages, both actual and punitive. *Id.* ¶ 226.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss" for failure to state a claim, a plaintiff must plead sufficient facts to state a claim that is "plausible on its face." *Id.* (quoting *Twombly*, 550

U.S. at 570). A claim is plausible on its face when a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"In analyzing the sufficiency of the complaint," I may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004), *abrogated on other grounds by Twombly*, 550 U.S. 544. The complaint's factual allegations are accepted "as true" and construed "in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## III.   ANALYSIS

Cook pleads false arrest and malicious prosecution claims. "To succeed on a false-arrest claim [under federal law], a plaintiff must establish (1) a lack of probable cause and (2) an arrest." *Brooks v. Miller*, 78 F.4th 1267, 1281 (11th Cir. 2023). To succeed on a malicious prosecution claim, a plaintiff must prove both "(1) the elements of the common-law tort of malicious prosecution and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures." *Blue v. Lopez*, 901 F.3d 1352, 1357 (11th Cir. 2018). "[T]he constituent elements of the common law tort of malicious prosecution include[ ]: (1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and

(4) caused damage to the plaintiff accused." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (alterations in the original) (quoting *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003)). The Eleventh Circuit has recently simplified the malicious prosecution standard to three elements: (1) "the legal process justifying [the plaintiff's] seizure was constitutionally infirm"; (2) the "seizure would not otherwise be justified without legal process"; and (3) "the criminal proceedings against [the plaintiff] terminated in his favor." *Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (alterations in the original) (quoting *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020)). As should be evident, unlike a false arrest claim, a malicious prosecution claim "requires a seizure 'pursuant to legal process.'" *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).

The defendants argue that, because arguable probable cause supported the arrest of Cook, qualified immunity bars Cook's false arrest and malicious prosecution claims under § 1983. MTD at 11–13. Next, the defendants argue that Cook fails to plausibly allege the involvement of certain defendants in the false arrest. *Id.* at 13–16. Third, the defendants argue that Cook fails to plausibly allege malicious prosecution. *Id.* at 16. Finally, the defendants argue that qualified immunity requires dismissal of Cook's state law claims. *Id.* at 17.

9

### A. Federal Claims

### 1. Qualified Immunity

"The qualified immunity defense shields 'government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (omission adopted) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"To receive qualified immunity, [a] public official 'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee*, 284 F.3d at 1194.

"To overcome a qualified immunity defense, the plaintiff must make two showings." *Corbitt*, 929 F.3d at 1311. The plaintiff must first show "that the defendant violated a constitutional right." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1199 (11th Cir. 2007). The plaintiff must then "show that the violation was clearly established." *Id.* For the second inquiry, the key question "is whether the state of the law gave the defendants 'fair warning' that their alleged conduct was unconstitutional." *Vaughan v. Cox*, 343 F.3d 1323, 1332

(11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)); *see Anderson v. Creighton*, 483 U.S. 635, 640 (1987) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). This question must be answered by "looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court." *Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012).

Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Corbitt*, 929 F.3d at 1311 (quoting *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002)). "Once an officer has raised the defense of qualified immunity, the burden of persuasion on that issue is on the plaintiff." *Id.* (quoting *St. George*, 285 F.3d at 1337). Both the "Supreme Court and th[e Eleventh Circuit] have 'repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Miller v. Palm Beach Cnty. Sheriff's Off.*, No. 23-13753, ---F.4th ----, 2025 WL 631192, at *2 (11th Cir. Feb. 27, 2025) (omission adopted).

## 2. Arguable Probable Cause

If an arrest is supported by arguable probable cause, then qualified immunity applies to a defendant accused of false arrest. *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir.

2023).[3] The opposite is also true—the absence of arguable probable cause negates qualified immunity because it means that a defendant violated clearly established law. *See Edger*, 84 F.4th at 1236.

"Whether an officer possesses probable cause or arguable probable cause depends on the elements of the alleged crime and the operative fact pattern." *Brown v. City of Huntsville*, 608 F.3d 724, 735 (11th Cir. 2010). "Showing arguable probable cause does not, however, require proving every element of a crime." *Id.* "An officer has *arguable* probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.' " *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 68 (2018)).

---

[3] The defendants argue that they are immune from Cook's false arrest and malicious prosecution claims because arguable probable cause existed for Cook's arrest. MTD at 13. Although arguable probable cause is a defense to both sets of claims, the inquiry is different with respect to each. In the false arrest context, a court must ask "whether the totality of the circumstances known to the arresting officer at the time of the seizure provided probable cause to suspect the plaintiff of a crime." *Sylvester*, 94 F.4th at 1330. In the malicious prosecution context, "the inquiry is about the legal process that justified the plaintiff's arrest and the defendant's role in that process." *Id.* For example, in a case concerning an allegedly defective warrant, the defendant that provided the warrant affidavit is entitled to qualified immunity if the "affidavit is still able to establish at least arguable probable cause" after any "false or misleading inculpatory statements" are removed and any "omitted exculpatory information" inserted. *Id.* at 1331. Because Cook's allegations pertain only to the false arrest inquiry, the false arrest claims are the focus of this subsection. Cook's reliance on the same allegations to support his malicious prosecution claims and his failure to plausibly allege that the defendants caused any seizure pursuant to legal process provide sufficient reason to dismiss his malicious prosecution claims. *See* Section III.A.4. To the extent any malicious prosecution claim could be based on Cook's allegations, the defendants would be entitled to qualified immunity due to arguable probable cause.

An officer lacks arguable probable cause, on the other hand, "only if 'the state of the law on the date of the alleged misconduct makes it obvious that the [officer's] acts violated the plaintiff's rights in the specific set of circumstances at issue.'" *Id.* (alteration in the original) (quoting *Washington v. Howard*, 25 F.4th 891, 903 (11th Cir. 2022)). "[T]he dispositive question is whether it was already clearly established, as a matter of law, that at the time of Plaintiff's arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest Plaintiff under the particular circumstances Defendants confronted." *Gates v. Khokhar*, 884 F.3d 1290, 1303 (11th Cir. 2018) (emphasis omitted); *see Wesby*, 583 U.S. at 64 ("In the context of a warrantless arrest, the rule must obviously resolve 'whether the circumstances with which the [particular officer] was confronted . . . constitute[d] probable cause.'" (alterations in the original) (quotation marks omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 13 (2015) (per curiam))). This inquiry evaluates the officer's actions based on "whether 'reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)), *abrogated in part on other grounds as recognized by Williams*, 965 F.3d at 1159.

An officer may lack arguable probable cause because: (1) "an existing precedent establishes that there was no actual probable cause for an arrest on similar facts"; (2) "the

13

text of an applicable statute plainly precludes him from making an arrest under that statute"; or (3) "the officer may have been so lacking in evidence to support probable cause that the arrest was obviously unconstitutional." *Garcia*, 75 F.4th at 1187.

### 3. Cook's False Arrest Claims Fail Because the Defendants Had Arguable Probable Cause

The defendants argue that they are entitled to qualified immunity because the alleged facts establish that arguable probable cause supported the decision to arrest Cook for conspiracy to commit tampering or fabricating evidence. MTD at 11–13.[4] The defendants' argument depends on the "elements of the alleged crime and the operative fact pattern" contained in the amended complaint. *Brown*, 608 F.3d at 735.

In Florida, a person is guilty of criminal conspiracy if he "agrees, conspires, combines, or confederates with another person or persons to commit any offense." § 777.04(3), Fla. Stat. As explained by the Florida Supreme Court, the "crime of conspiracy is defined as an agreement, express or implied, between two or more people to commit an unlawful act." *Bradley v. State*, 787 So. 2d 732, 740 (Fla. 2001) (per curiam). "Conspiracy can be proven by circumstantial evidence and thus a jury may infer that an agreement existed to commit a crime from all the surrounding and accompanying

---

[4] There is no dispute that the defendants were acting within the scope of their discretionary authority. *See Vinyard*, 311 F.3d at 1346 (concluding that an officer was acting within scope of his discretionary authority when the officer arrested the plaintiff).

circumstances." *Id.* As for tampering with or fabricating evidence, the relevant statute

provides:

> (1) It is unlawful for any person, knowing that a criminal trial, proceeding, or investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury or legislative committee of this state is pending or is about to be instituted, to:
>> (a) Alter, destroy, conceal, or remove any record, document, or other item with the purpose to impair its verity or availability in such proceeding or investigation; or
>> (b) Make, present, or use any record, document, or other item, knowing it to be false.

918.13, Fla. Stat.

The defendants point to three pieces of evidence. First, Cook conducted the

investigation with Raczynski and Lawson and counted the money at the scene. MTD at

12; *see* Am. Compl. ¶¶ 16–18. Second, after suspicions arose about the money in March

2021, Cook entered a "notary report" attesting to the entry of the cash into evidence. MTD

at 12; *see* Am. Compl. ¶ 24. Third, despite the notary report, the cash was never placed

into evidence. MTD at 12; *see* Am. Compl. ¶ 28. A reasonable officer, the defendants

contend, "could have believed that [Cook] was involved with Raczynski and Lawson to try

to cover up the missing cash" when it "later turned out that the cash was never placed into

evidence." MTD at 12.

Arguable probable cause existed based on the facts alleged in the amended

complaint. The defendants were informed that Cook counted the money at the scene and

then, when suspicions arose as to the money in March 2021, Cook notarized Raczynski's

supplement report. Cook's act of notarization is "circumstantial evidence" of a conspiracy, *Bradley*, 787 So. 2d at 740, and a reasonable officer "in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest" Cook for conspiring to commit tampering or fabricating evidence under Florida law, *Kingsland*, 382 F.3d at 1232 (quoting *Von Stein*, 904 F.2d at 579).

Cook contends that three reasons negate arguable probable cause.

First, Cook alleges that Raczynski did not obtain Cook's permission or consent prior to approving the electronic notary. *See* Resp. (Doc. 40) at 7. According to Cook, Brooks "knew that this electronic notary was 'fraudulent' based on the statement of Deputy Raczynski that he knew Mr. Cook's password and used it to electronically notarize his Supplement report." Am. Compl. ¶¶ 26–27, 37. But the defendants were not obligated to accept Raczynski's statement "as conclusive evidence" that Cook was not involved in submitting the supplement report. MTD at 12; *see Howard*, 25 F.4th at 902 ("Although Heard's statement—if true—was exculpatory, Howard was not required to believe it or to weigh the evidence in such a way as to conclude that probable cause did not exist."); *Davis v. City of Apopka*, 78 F.4th 1326, 1349 (11th Cir. 2023) (explaining that Eleventh Circuit precedent has never required that, before making an arrest, an officer is required "to believe, or to rule out, a suspect's innocent explanation"). Cook even alleges that not all of Raczynski's statements to investigators "turn[ed] out to be true." Am. Compl. ¶ 33.

16

Second, Cook highlights that notarizing a police report does not attest "to the contents of the report or the accuracy of the information contained in the report." Am. Compl. ¶ 25; *see* Resp. at 8. Instead, notarizing attests only "that the report was written by the Deputy who signed the report." Am. Compl. ¶ 25. This fact does not negate a finding of arguable probable cause. Even if the notarization was not an endorsement of the veracity of the supplement report, the defendants could still reasonably believe that Cook, by notarizing the supplement report, colluded with Raczynski and Lawson to cover up the missing cash.

Third and finally, Cook alleges that some of the defendants refused to investigate "his readily available alibi and the computer records," which would have established that he did not notarize Raczynski's supplement report. Am. Compl. ¶¶ 41–42; *see* Resp. at 7–8. Cook advised Brooks and Dainty before his arrest that he was out of the county on that date and that computer records and his supervisor would corroborate that assertion, but Brooks, Dainty, Russell, Britt Williams, and Larry Williams made the decision to arrest him without completing the investigation. *Id.* ¶ 42. Cook argues that the officers therefore failed to "conduct a reasonable investigation" and failed to acquire "readily obtainable" information. Resp. at 4.

Cook, who has the burden of persuasion, fails to demonstrate that "a review of the case law [at the time of the arrest] would have indicated to [the defendants] that the

17

Constitution required *further* investigation to confirm that the evidence [they] possessed was accurate." *Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019). True, an arresting officer must "conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). Officers may not "unreasonably and knowingly disregard or ignore evidence or refuse to take an obvious investigative step that would readily establish that they lack probable cause to arrest a suspect." *Harris v. Hixon*, 102 F.4th 1120, 1129 (11th Cir. 2024). But "officers are not required to perform error-free investigations or independently investigate every proffered claim of innocence," *Kingsland*, 382 F.3d at 1229 n.10, nor does "every failure by an officer to discover 'easily discoverable facts' violate[] the Fourth Amendment," *Rivera*, 939 F.3d at 1248. Instead, the Eleventh Circuit has denied qualified immunity for failure to conduct a reasonable investigation only in very limited circumstances unlike those alleged here. Three examples illuminate the dividing line between failing to discover and electing to ignore easily discoverable facts.

Start with *Kingsland*. There, Kingsland's truck collided with an off-duty police officer's vehicle. 382 F.3d at 1223. Following the accident, a disoriented Kingsland climbed out of her vehicle "and sat down in a pile of shattered glass adjacent to the truck." *Id.* Miami police officers quickly arrived at the scene but did not approach Kingsland for thirty minutes, instead speaking at length with the off-duty officer. *Id.* Kingsland, injured and

dizzy, never received medical attention and no officer asked Kingsland for her version of events or those of her two passengers. *Id.* The officers did not interview any other witnesses either. *Id.*

Eventually, two officers claimed to smell an odor of cannabis emanating from Kingsland. The officers did not search her vehicle nor did they summon drug-sniffing dogs. *Id.* No cannabis was ever found. *Id.* at 1224. Officers then administered a field sobriety test on Kingsland, who had "informed the officers that she was feeling dizzy and sick, and that she wanted to go to the hospital." *Id.* After an officer determined that Kingsland failed the sobriety test, officers "escorted Kingsland into a police cruiser, informing her that she was being transported to the hospital for treatment and more tests." *Id.* Instead, they took her into custody and brought her to a DUI testing facility, where she "performed between two and four Breathalyzer tests, all of which came back negative—with a 0.000% alcohol content." *Id.* As a result, "the officer who was writing on a form asked another officer what he should then write," and the "second officer told the first officer to write that Kingsland had a strong odor of cannabis emitting from her breath." *Id.* The first officer then "threw away the form he was writing on and started writing on a new form." *Id.* After taking other tests and providing a urine specimen, Kingsland was arrested and charged with DUI-cannabis. *Id.* at 1225.

Kingsland brought false arrest and malicious prosecution claims, and the district court granted summary judgment to the officers based on qualified immunity. *Id.* at 1225–26. The Eleventh Circuit reversed, in part, due to the officers' insufficient investigation, noting two problems. First, "an officer may not choose to ignore information that has been offered to him or her, such as Kingsland's assertions that she was injured and that Officer De Armas ran the red light." *Id.* at 1229. Stated otherwise, officers cannot "turn[] a blind eye to immediately available exculpatory information." *Id.* at 1229 n.10. Nor may an "officer conduct an investigation in a biased fashion or elect not to obtain easily discoverable facts, such as whether there was cannabis in the truck or whether witnesses were available to attest to who was at fault in the accident." *Id.* at 1229; *see also id.* at 1230 ("[A] reasonable jury could find that the appellees' investigation was deficient in that the officers consciously and deliberately did not make an effort to uncover reasonably discoverable, material information.").

The facts of *Kingsland* are worse still. "[T]he arresting officers did not just fail to follow-up or even turn a blind eye, they affirmatively misrepresented their intentions and came dangerously close—if they didn't go all the way—to manufacturing evidence." *Huebner v. Bradshaw*, 935 F.3d 1183, 1190 (11th Cir. 2019); *see Rivera*, 939 F.3d at 1248 ("[T]he evidence [the officers] possessed did not give rise to the narrative they included in their report and used to arrest the plaintiff."). It is on these facts that the Eleventh Circuit

20

has distinguished *Kingsland* several times. *See, e.g., Huebner*, 935 F.3d at 1189–90; *Davis*, 78 F.4th at 1345.

Cook's case differs markedly from *Kingsland*. As an initial matter, Cook does not allege that the defendants manufactured or fabricated evidence, which renders *Kingsland* unilluminating as a guidepost for what constitutes clearly established law in the "reasonable investigation" context. Next, here, the officers interviewed and arrested the other suspects first, and evidence in their possession—Cook's initial involvement with the money and his notarization of the supplement report without the cash in evidence—provided arguable probable cause. Unlike *Kingsland*, Cook does not allege that the defendants refused to speak to him or consider immediately available exculpatory evidence. Nor does Cook allege that the defendants conducted their investigation in a biased manner by only considering inculpatory evidence. Instead, Cook faults the officers for not tracking down additional record and testimonial evidence before making an arrest. But *Kingsland* does not clearly establish that the Fourth Amendment requires an officer to take these further steps to satisfy a "reasonable investigation." *Cf. Davis*, 78 F.4th at 1337 (explaining that an officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause" (quoting *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988))).

*Carter v. Butts County*, 821 F.3d 1310 (11th Cir. 2016), provides a second example. The officer in *Carter* arrested maintenance workers who were cleaning up the officer's foreclosed-upon home for the offenses of burglary, criminal trespass, and theft by taking. *Id.* at 1315–18, 1320. The employees later sued for false arrest, and the district court denied qualified immunity to the officer. *Id.* at 1318. The three offenses share a common thread: "a lack of authority to be at or inside the Property and a lack of authority to remove the Property's contents." *Id.* at 1320. In affirming the denial of qualified immunity because the officer lacked arguable probable cause, the Eleventh Circuit concluded that "a reasonable officer should have known both that Plaintiffs were authorized to enter the Property and that they were authorized to remove its contents." *Id.* at 1321. Several facts support this conclusion. Before arriving at the scene, the officer knew from at least two different sources that the maintenance workers were authorized to enter and clean out the foreclosed upon house. *Id.* When he arrived, the plaintiffs also provided documentation demonstrating that they were authorized to clean out the home, but the officer refused to review the documentation. *Id.*

Not true here. Cook does not allege that the defendants had exonerating evidence in hand before arresting him that they intentionally ignored. Instead, Cook complains that the defendants did not do more themselves to get exculpatory evidence. But *Carter* clarifies that the clearly established constitutional violation sounds more in the nature of willful

22

blindness than affirmative good policing. *Cf. Rivera*, 939 F.3d at 1248 ("[T]his is not a case in which Rivera possessed some inculpatory evidence and some exculpatory evidence, and rendered herself willfully blind to the latter while devoting herself to believing in the former.").

A third example is *Cozzi v. City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018), *abrogated in part by Washington*, 25 F.4th at 899–900.[5] An anonymous tip led to the investigation of the plaintiff as a suspect in an attempted robbery and a search of his house pursuant to a warrant. *Cozzi*, 892 F.3d at 1292. The search uncovered no mask, no note, and no clothing that matched the perpetrator's description. *Id.* A photo of the perpetrator from the crime scene revealed "numerous tattoos up and down his arm," but the plaintiff's roommate pointed out to officers—before the plaintiff's arrest—that he had "only one tattoo." *Id.* With nothing recovered from the search of the plaintiff's home connecting him to the attempted robbery and without viewing or asking about his tattoo, the officers arrested the plaintiff. *Id.* at 1292–93. The Eleventh Circuit concluded that the officer's failure to look at the plaintiff's tattoo before arresting him—"[d]espite having been given plainly exculpatory and easily verifiable information"—was unreasonable. *Id.* at 1297. With the plaintiff "handcuffed and standing right outside the house," the officer "unreasonably disregarded" exculpatory evidence. *Id.* (quoting *Kingsland*, 382 F.3d at 1233).

---

[5] "*Cozzi* applied a more demanding probable cause standard" than precedent requires, *Harris*, 102 F.4th at 1128, but it remains a helpful comparator.

*Cozzi* provides no useful comparator that renders it clearly established that the defendants here lacked probable cause. Cook does not allege that the defendants were in possession of exculpatory information when they arrested him, or that they turned a blind eye to exculpatory evidence that he gave them during the interrogation. A far closer case would arise if Cook had alleged that he handed exculpatory computer records to the defendants and the defendants refused to consider them. Or if Cook alleged that his supervisor was present and verified Cook's non-involvement in the supplement report but that the defendants ignored the supervisor. Cook alleges instead that the defendants decided not to pursue additional information before arresting him. Resp. at 7–8.

*    *    *

To the extent he makes the argument, Cook fails to demonstrate that the evidence the defendants possessed—Cook handling the money at the scene, his notarization of the supplement report, and the fact that the money was never entered into evidence—was insufficient to establish arguable probable cause for the crime of conspiring to tamper with or fabricate physical evidence. Cook does not cite any Supreme Court, Eleventh Circuit, or Florida precedent that "establishes that there was no actual probable cause for an arrest on similar facts," nor does he explain how the text of the relevant Florida statutes "plainly preclude[] [the defendants] from making an arrest under [those] statute[s]." *Garcia*, 75

24

F.4th at 1187. And the defendants were not "so lacking in evidence to support probable cause that the arrest was obviously unconstitutional." *Id.*

Cook more directly argues that a "cautious man" would have investigated further to uncover exculpatory evidence, Resp. at 9, but he does not establish that the defendants were on notice that, in these circumstances, the Fourth Amendment required more. The Supreme Court has instructed that "specificity" of clearly established law "is especially important in the Fourth Amendment context." *Wesby*, 583 U.S. at 64 (quoting *Mullenix*, 577 U.S. at 12). And Cook's allegations do not satisfy the Eleventh Circuit's general rule concerning reasonable investigations that officers cannot "consciously ignore[] information they already possessed that cast significant doubt on whether a defendant [i]s guilty." *Rivera*, 939 F.3d at 1248. Cook has therefore failed to show that the law "makes it obvious that the [officers'] acts violated [his] rights." *Washington*, 25 F.4th at 903 (quoting *Gates*, 884 F.3d at 1297). In other words, it was not "already clearly established, as a matter of law, that at the time of [Cook's] arrest, an objective officer could not have concluded reasonably that probable cause existed to arrest [Cook] under the particular circumstances [the defendants] confronted." *Gates*, 884 F.3d at 1303 (emphasis omitted); *accord Garcia*, 75 F.4th at 1187.

Because arguable probable cause supported the arrest, Cook fails to allege, with respect to his federal false arrest claims, the violation of a clearly established right under

the Fourth Amendment. *Edger*, 84 F.4th at 1236. As a result, the defendants' motion is granted with respect to Cook's false arrest claims under § 1983. *See Corbitt*, 929 F.3d at 1311.[6]

### 4. Cook's Malicious Prosecution Claims Fail Because Cook's Arrest Was Not "Pursuant to Legal Process"

Even absent arguable probable cause to arrest Cook, the amended complaint fails to plausibly allege malicious prosecution. A claim of false arrest "concerns seizures without legal process, such as warrantless arrests." *Williams*, 965 F.3d at 1158. "Malicious prosecution, in contrast, requires a seizure 'pursuant to legal process.' " *Id.* (quoting *Black*, 811 F.3d at 1267); *see Sylvester*, 94 F.4th at 1330 ("A 'malicious prosecution' claim is that an officer used a constitutionally deficient legal process to effectuate an arrest—here, an allegedly defective warrant."); *Laskar v. Hurd*, 972 F.3d 1278, 1292 (11th Cir. 2020) ("A claim of malicious prosecution under the Fourth Amendment is only 'shorthand' for a claim of deprivation of liberty pursuant to legal process." (quoting *Williams*, 965 F.3d at 1157)). "[W]arrant-based seizures fall within this category," as do "seizures following an arraignment, indictment, or probable-cause hearing." *Williams*, 965 F.3d at 1158. Warrantless arrests do not. *See Kingsland*, 382 F.3d at 1235; *Donley v. City of Morrow*, 601 F. App'x 805, 814 (11th Cir. 2015) (per curiam).

---

[6] Because of this conclusion, I do not consider the defendants' argument that the amended complaint fails to plausibly allege "personal involvement" of the individual defendants. *See* MTD at 13–16.

Cook fails to allege that his arrest was pursuant to legal process, and Cook does not identify any additional seizure. In his response to the defendants' motion, Cook cites the legal process that followed his arrest and argues that pretrial release restricted his liberties. Resp. at 16–17. That does not cure his pleading. For one, Cook's response attempts to add allegations to the amended complaint. *See Equal Emp. Opportunity Comm'n v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) ("[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.' " (quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990))). Second, even if I were to consider the added allegations, they do not explain how the named defendants caused any seizure pursuant to legal process.[7] Therefore—added allegations or not—Cook fails to state a claim of malicious prosecution.

## B. State Law Claims

In the ordinary course, "where the federal claims have been dismissed and the case is before a federal district court solely through supplemental jurisdiction, a court should decline supplemental jurisdiction." *Stalley v. Cumbie*, 586 F. Supp. 3d 1211, 1249 (M.D. Fla. 2022). "Before applying that general rule courts engage in a two-step process: first, the district court must confirm that it has discretion to decline under § 1367(c); and second, it must consider whether prudential factors counsel against dismissal or remand." *Id.* Here,

---

[7] I need not reach the defendants' argument that the amended complaint fails to plausibly allege that the defendants acted with "malice." MTD at 16.

with the federal question claims dismissed with prejudice and the prudential factors all counseling against retaining supplemental jurisdiction, I dismiss without prejudice the state law claims.

Discretion exists under § 1367(c) because Cook's federal claims—the only claims that come within a federal court's original jurisdiction—have been dismissed. *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006) ("Any one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims.").

The next question is whether "judicial economy, convenience, fairness, and comity" counsel against dismissal. *Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (quoting *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)). As "in the usual case," the "balance of factors" points toward "toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

First, declining to exercise jurisdiction over the state law claims does not impinge upon judicial economy. This case remains at the pleading stage and this Court has not

"expended unnecessary resources that will need to be repeated in state court." *Austin v. Metro Dev. Grp., LLC*, 571 F. Supp. 3d 1279, 1295 (M.D. Fla. 2021).

Second, convenience to the parties favors declining jurisdiction. Given that all the parties likely reside in or near Polk County, Am. Compl. ¶¶ 6–13, the Tenth Judicial Circuit "will be a more central—and thus convenient—location to gather the evidence, parties, attorneys, and witnesses for trial," *Stalley*, 586 F. Supp. 3d at 1250.

Third, dismissal creates no unfairness to the litigants. Given the stay currently in place, (Doc. 55), the parties have not expended significant resources preparing for trial in this forum. And any preliminary discovery will only assist in delivering an expedient resolution in state court.

Fourth and finally, comity weighs strongly in favor of dismissing Cook's state law claims. Comity is "served when issues of state law are resolved by state courts," *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002), and the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial," *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). "State courts, not federal courts, should be the final arbiters of state law." *Baggett*

*v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). For all these reasons, dismissal under § 1367(c)(3) is warranted. *See Harris-Billups ex rel. Harris v. Anderson*, 61 F.4th 1298, 1305–06 (11th Cir. 2023) (concluding that a district court did not abuse its discretion when it "decline[d] to exercise supplemental jurisdiction over [the plaintiff's] state-law claims" after the district court "dismissed the § 1983 claim," which was "the sole claim over which it had original jurisdiction").

## IV.    CONCLUSION

Arguable probable cause supported Cook's arrest, entitling the defendants to qualified immunity on the federal claims of false arrest. Cook also fails to plausibly allege federal claims of malicious prosecution. Because Cook's federal claims are dismissed, I decline to exercise supplemental jurisdiction and dismiss the state law claims without prejudice.[8]

---

[8] After expiration of Rule 15(a)(1)'s twenty-one-day window for an amendment as of right, "district courts are not required to *sua sponte* grant counseled plaintiffs leave to amend their complaint in the absence of a request for such relief." *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1132 (11th Cir. 2019). To request leave to amend, a plaintiff must "file a motion for leave to amend" and "either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." *Advance Tr. & Life Escrow Servs., LTA v. Protective Life Ins. Co.*, 93 F.4th 1315, 1336 (11th Cir. 2024) (quotation marks omitted) (quoting *Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018)). Cook has not filed a motion. Instead, at the end of the response to the motion to dismiss, Cook asks for a "final chance to amend the pleadings." Resp. at 18. "This is procedurally improper" and reason alone to deny Cook another chance to amend. *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1236 (11th Cir. 2022); *accord Newton v. Duke Energy Fla., LLC*, 895 F.3d 1270, 1277 (11th Cir. 2018) ("[W]here a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly." (quoting *Fifth Third Bank*, 879 F.3d at 1157)). Also, outside of additional allegations as to the malicious prosecution claims in his response to the motion to dismiss, Cook fails to explain the substance of his proposed amended pleading.

Accordingly, the following is **ORDERED:**

1.    The Motion to Dismiss (Doc. 38) is **GRANTED.**

2.    The federal claims, Counts I through XIV, are **DISMISSED with prejudice.**

3.    The state law claims, Counts XV through XXVI, are **DISMISSED without prejudice**.

4.    The clerk is directed to enter **JUDGMENT** which shall read, "This case is dismissed. The federal claims, Counts I through XIV, are dismissed with prejudice. The state law claims, Counts XV through XXVI, are dismissed without prejudice."

5.    The clerk is further directed to **TERMINATE** any pending deadlines and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 10, 2025.

Kathryn Kimball Mizelle
United States District Judge